14-1680, In Re Intercarrier Communications, Mr. Greenspan. Thank you, Your Honors. And good morning, Your Honors. May it please the Court, this appeal raises sequential points of error, the common situation where if you agree with the patentee on the first point of error, then you don't need to reach the second, et cetera, and so on. And the first point being Bennett does not anticipate, and that's supported by the original examiner's failure to use it to anticipate or withhold patentability. The original examiner considered Bennett. Well, apart from that, what argument do you have that it doesn't anticipate? Well, there are two, Your Honor. One is that the Bennett prior art, such as it is, if it is prior art, we'll get to that. The Bennett reference doesn't show a separate addressing in an embodiment that also, so a separate addressing from the payload of a message in an embodiment that matches all the other claim limitations. Well, I don't understand. The claim doesn't require that the address be separate from the text, does it? Well, Your Honor, in our reply brief, we cited the precedence of this Court that say when you call out different limitations as separate things within a claim, then they must be construed separately. And then in the briefing, we also... No, but I don't think you're answering my question. What is it in the specification or the claim that indicates that it has to be separate from the body of the message? I'll give you the claim first and then the specification. In the claim, we specifically call out a user payload. That's also known as a synonym for the body of the message. And then we separately say that the user payload is addressed with a phone number. And if you look in the specification, I would commend Your Honor's attention to column 11, lines 30 through 35. That's a location in the specification where the body of the message is described as separate from the phone number that has the syntax added. They're carried forth in the workflow of the idea of the software of the machine as separate things. So the specification certainly supports separate treatment in the claim. And if that answers your question, Your Honor, I'll move on. Even if we had issues with anticipation, the second point of appeal is that the Rule 131 declaration satisfied at least the minimum legal standards to antedate Bennett, which was a section 102E reference. These are all issues that are amply briefed. The declaration didn't discuss reduction to practice, correct? The page that the inventor signed didn't have the words reduction to practice. That's correct, Your Honor. But the page the inventor signed did say the attached exhibit, I'm paraphrasing a little bit now, but the attached exhibit showed that I invented the subject matter of the invention beforehand. And we know from the precedent. And they're supposed to infer from that that he's talking about a reduction to practice? Well, I agree that that is a weak point in our argument. I agree that this was not a declaration that was written in the way that I would write it and the way that Your Honors would expect it. So the question is that it satisfied the minimum legal standards. And that also segues into the administrative due process issue, which is really where I'd like to focus my comments today. Can I ask, why was this declaration even timely in the first instance? I mean, wasn't it, wasn't it, wouldn't it have been appropriate for the examiner to simply reject it because it wasn't filed in time? That is not correct. And the reason I can tell you that with confidence, Your Honor, is the Land O'Lakes decision. If that doesn't, I understand that's not binding precedent on this court since it's a district court decision. But it's certainly a reasoned analysis of a very analogous situation. And perhaps it might even be collateral estoppel against the Patent Office because it involved an inter partes re-examination. It involved an action-closing prosecution. It involved a declaration submitted that, where the first critique of the declaration occurred in, or let me rephrase, there was a first declaration submitted. The action-closing prosecution criticized it. Then it was resubmitted. And then the right of appeal notice said that it, whatever you tried to do to fix the problem didn't work. And let's go back to what actually happened in this case procedurally. What actually happened was that there was a non-final rejection as there always is when inter partes re-exam is instituted. In response to the non-final rejection, the first incorrect or insufficient not declaration was submitted, granted. In response to that, in the action-closing prosecution, the examiner said, I have a problem with that first not declaration. It is directed to the wrong patent. I need a declaration that is explicitly directed to these specific patent claims, not a related one in the family. That's the only flaw that the examiner ever identified at a time when there is a right, a procedural right, even if it was a discretionary procedural right like in Land O'Lakes, to correct it. So, with the procedural right that we had, that we know we have because of the Land O'Lakes decision where it would have been an abuse of discretion not to allow it, we submitted a new one. The new one fixed the only flaw ever identified by the examiner at a time when there was a right to fix the problem. And at that point, it was incumbent upon the examiner to either accept it, we're now after the second action-closing prosecution, or to say that there's another problem with it and reopen prosecution, basically. You don't see a difference between submitting one declaration directed to a particular patent and then the examiner saying, there's a little bit of flaw in this and then trying to fix it later and saying, we don't submit any declaration related to this patent, but we want you to go back and look at a different declaration in a different patent. You don't see the difference between those two? Well, I think I get the thrust of your question, Your Honor. And the answer is that we fixed the flaw identified by the examiner when it was identified, when there was a right to fix it. When the examiner approached that second declaration that fixed the problem, like I said, he had two choices. He could either allow the case because it was effective as an anti-dating declaration, or he could, in another action-closing prosecution, identify more flaws if that were going to be the case. You mean he was obligated, when you submitted the second application, to issue another action-closing prosecution rather than a rants? That's what he did, in fact, in this case. He issued a second action-closing prosecution where there's a mistake in that second action-closing prosecution that even my brother on the other side of the... He didn't discuss the declaration is what you're saying. He didn't discuss the declaration until the rant. Correct, Your Honor. Right? He mistakenly... So at that point when he discussed the declaration and the rant, did you say that you wanted to submit additional information? At that point, there is absolutely no procedural right to do so. What about the petition to the director? Isn't that exactly what Land O'Lakes was talking about? There is a petition process that you can go to the director, if that's correct. Right, and you didn't do that. The Land O'Lakes folks took that route. Right, so when you're saying that the district court decided this question, the district court decided what the resolution of the petition should have been, not... It didn't consider your circumstance where you didn't file a petition. Almost correct, Your Honor. The district court was actually in the second round of proceedings and focusing on a second round of petitions. So the applicant in that case had already gotten permission through the Patent Office procedures to submit an otherwise untimely declaration. That was the first declaration. It was that post-petition number one declaration that was reviewed by the examiner. So we don't have a petition before us, and isn't that what the government is going to argue, that you should have petitioned? I believe the government will argue, but I'll let them speak for themselves, of course. But the answer to that is, it's in our reply brief, that what we brought to this court, insofar as the examiner's mistakes are concerned, is something that tradition and precedent allow this court to review, which is a rejection that's intimately intertwined with the merit. Even if you didn't have to petition, didn't you at least have to raise the issue with the board? Your Honor, we did raise the issues with the board. No, you didn't say, we want an opportunity to submit something now because our declaration has been rejected as insufficient. I disagree, Your Honor, because the record does show that, at least at the oral hearing, we explained that there is a power of the board to remand to complete the file that's been briefed by both sides in this. We did make that request to the board. But that at least phrase is kind of important. I mean, the rules of the board are, you make your requests in your brief. That's right. And you asked them to take judicial notice or whatever the language is, and they said, no, we don't do that. But you didn't say in a timely fashion, that is before the oral argument to the board, we would like a remand for reopening to bring this other declaration into the proceeding. I actually agree with that, Your Honor. But what we did do is we put in a footnote, we put in the body of our briefing the unfair situation that led to our eventual request at the oral argument at the hearing to remand to complete the file. We explained that it was for the very first time in the right of appeal notice that we ever got the first critique of the declaration that actually was the operative declaration for this case. So if I may turn to the, again, the point of appeal that I think I'd like to focus on. The patent office going in a different direction from the examiner, the board going in a different direction from the examiner in the substance of why, the rationale of why it was not going to give anti-dating effect. And this, Your Honors, is the latest in a series of cases where the patent office says move the goalposts in the middle of the game and where this court has been asked to intervene. We have most recently N. Ray Biederman, and Your Honor, Judge O'Malley, you sat on the panel, 733 F. 3rd 329 from the year 2013. We have N. Ray. What is the gist of the real substantive difference between the examiner's finding the NOTS 131 declaration insufficient, including exhibits, and the board's finding it insufficient? You'll find the examiner's treatment at A. 1247 through 1253. And what the examiner comes down with is a critique of a couple of the claim limitations that he believed were missing from the exhibits. He believed that it was not right to give anti-dating effect because these claim limitations were missing. When we got to the board level, after there had been enormous briefing to point out that that was an error by the examiner because the exhibits did contain or did disclose the claim limitations, the board went in a different direction and said, you know, you have a declaration signed by the inventor. We think the inventor should be the one pointing us to the claim limitations in the exhibits, and we're not going to pay very much attention to your attorney argument. Your Honor, I see I'm in my rebuttal time. All right. You want to save your rebuttal? Yeah, thank you. Mr. Foreman? May I plead the court? Intercarrier received two opportunities to annotate Bennett. The first time, all they did was point the examiner to another declaration filed in another case, and the examiner correctly said, that's not good enough. Second time, they submitted a one-page conclusory declaration that doesn't say anything about reduction of practice, and the examiner and the board explained why that wasn't good enough. Do I take it that you have not asserted here that the rejection can be sustained on the ground that the Knott's declaration and associated materials do not demonstrate conception? That's correct. We're not focusing on conception. The whole question is either actual reduction to practice or diligence to get to the ultimate written one. That's correct, Your Honor. And with regard to actual reduction of practice, the only evidence, alleged evidence, they rely on is the use of past or present tense verbs in the proposal document. Now, did the point that the board made about actual reduction to practice appear in the examiner's rejection of the antedating? No, because they never raised the issue of actual reduction to practice before the examiner. If you look at their arguments... They raised it for the first time before the board. Correct. So if you look at what they raised to the examiner, they only talk about conception and diligence, and that's all the examiner analyzed, conception and diligence. When they got to the board, they changed their argument and also argued actual reduction to practice. So that's why you see that first analyzed by the board. The board didn't... I mean, I guess the board didn't catch it as a newly raised argument. So, like I was saying, they only rely on the past or present tense use. So you're saying for the board, it's like no good deed goes unpunished. Instead of saying we won't consider it because you didn't raise it before, they consider it, and now they're saying it's a new ground of rejection. Essentially, that's correct. I mean, aside from, and I don't mean to diminish this, the no good deed goes unpunished, but why isn't that a new ground of rejection? Well, it's not. I mean, the board found, just like the examiner found, the board found a lack of conception coupled with diligence. So even if you disregard the issue of reduction in practice, the board affirmed the findings of the examiner. But I guess I do want to be clear about this. You really, really do not make an argument in your brief that this can stand on the basis of no showing of conception. Correct. In fact, you disclaim it in what is it, footnote 9 on page 28? That's correct. But with conception, you have to show diligence as well, and there's clearly no evidence of diligence here. But the examiner found no evidence... Well, reduction to practice would be an alternative to conception and diligence, and it's hard to see how you can have a new ground of rejection if they elect to bring something in and address it that the patentee brought in for the first time before the board. I agree. I agree, Your Honor. But getting back to your questions, both, I mean, the examiner clearly explained why there's that one-page declaration from Mr. Knox. I mean, you don't even have any evidence of what the attorney was doing, when the attorney received the documents, what he was doing during that time before he filed. The other side doesn't, I think, argue that the Knox declaration shows diligence. They say we should have been able to use the Bowling or something, the Bowman declaration from the other proceeding, and that would have shown it. Correct. Yeah, they dropped all reliance on the Knox declaration for purposes of diligence. And now they want, at the last minute, they first raise this Bowman declaration in a footnote in their appeal brief to the board, and that's simply under our rules. It's just simply too late, and the board has no duty to take notice of it. Well, they did offer that to the examiner in the first instance. No, they never offered the Bowman attorney declaration to the examiner. It was first raised to the PTO in a footnote in the appeal brief to the board. And the board correctly said that it's just too late in the process for us to look at this. So, turning to the actual anticipation question, I don't think there's really much of an argument in this case. The only argument they raise is that the MN has to be separate, fully separate and distinct from the body of the text message. There's really nothing in the claim language or nothing in the specification that supports that. They are separate things, but there's nothing that says that they can't be contained within the same data field that's being sent. And even if you were to make that claim construction finding, there is an example in the Bennett reference where the address is put in the to field instead of in the body of the message. So, I think any way you come out on the claim construction issue, Bennett is still anticipated. That piece, that last bit, the to field, was not discussed by the board, is that right? No, it was discussed, it's been discussed throughout the entire case, from the re-examination request to the examiner's office actions to the board decision. Everything cites that passage from Bennett. So, this is not a new argument or new ground being raised for the first time at the board. Finally, I just want to talk briefly about these procedural arguments that they raise about, you know, did the examiner do things correctly? Did the examiner cause them to be prejudiced? All of these arguments should have been raised in a petition to the director. This court has said that that's the appropriate way for these arguments to be addressed. They never raised them, so this court has no jurisdiction to decide them. Are there no further questions? Okay. Thank you, Mr. Foreman. Mr. Greenspan? Thank you, Judge. Your Honor, Judge Dyke, this has been thoroughly brief, but when you go to the to field disclosure in the reference, if you follow through what that embodiment is, it's now missing different claim limitations, and we point that out in our brief. So, you can't mix the embodiments to get an anticipation. And then we also point out in the brief that, while my brother is correct as to I think the claims dependent from Claim 7, that that section had been noted by the requester and then incorporated by the examiner and so forth through the board as to Claims 1 through 6, and then everything from 15 on. That was definitely a new ground of rejection. There is absolutely no question in the record that that's the case. Looking very quickly at why was reduction of practice raised for the first time for the board? It's obvious. It's because a critique of the actual operative not declaration didn't exist for the first time from the Patent Office until the right of appeal notice. The appeal, short of an extraordinary heroic effort. You had to invent a new argument because you didn't know why the old argument was being rejected? This is the Administrative Procedure Act, Your Honor. It's not our burden. I don't think the Administrative Procedure Act gives you the right to raise new issues on appeal within the agency that you didn't raise in the first instance. Agreed, except that it does require that the agency present the issue first to the litigant. This court's statement of the law about new grounds of rejection is absolutely on point. It's that the applicant must be given a fair opportunity to react to the thrust of the rejection. Before the examiner... When you raise a new argument to the board? It was only in response to the unfairness of the absence of administrative due process before the examiner. Unless there are further questions, Your Honor, I thank you. Okay. Thank you, Mr. Ranskill.